1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  DAVID L. STRATMON, JR.,                    CASE NO. CV-F-04-6437 REC DLB HC

12                  Petitioner,               FINDINGS AND RECOMMENDATIONS
                                              REGARDING PETITION FOR WRIT OF
13        vs.                                 HABEAS CORPUS

14  PAUL M. SHULTZ,                            [Doc. 1]

15                  Respondent.
                                        /
16

17        Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2241.

19                                  BACKGROUND

20  A.    Offense Conduct

21        In 1978, Petitioner pled guilty to assault with intent to kill.  P.S.R. at 5.  The facts underlying

22  this conviction are contained in the presentence report which is filed under seal in this Court.

23        In 1981, Petitioner was sentenced in the United States District Court for the District of

24  Columbia for possessing a sawed-off shotgun.  Id. at 6.  He was sentenced to one year of

25  incarceration, the execution of the sentence suspended while he was on three year probation.  Id.  His

26  probation was violated in June 1982, because of the offense described in the next paragraph, and he

27  was sentenced to the full one year term.  Id.

28        On June 13, 1982, Petitioner beat to death a 22 year old woman he called his common law

                                            1

1  wife. (Respondent's Exhibit 3, at 4.)  Petitioner admitted he was having problems with her.  Id.  She

2  and Petitioner had a son, but she had met someone else and had decided to break off their

3  relationship.  He claimed he lost control and beat her to death.  Id.  Petitioner pled guilty to the

4  murder charge.  (Respondent's Exhibit 1.)

5        In 1985, Petitioner was found guilty by jury of assault with intent to kill while armed and

6   assault with intent to rape while armed.  (Respondent's Exhibit 2.)  Petitioner received a sentence of

7  12 to 36 years on the murder charge and 15 years to life sentence on the assault convictions.

8  (Respondent's Exhibits 1, 2.)

9  B.      Conduct in Prison

10       Petitioner has received six disciplinary reports since he began serving his sentence on April

11  8, 1985.  On September 6, 1984, while he was in the custody of the Bureau of Prisons (hereinafter

12  "BOP") for the first time, he received a sanction for possessing intoxicants.  (Respondent's Exhibit

13  3, at 3.)  On March 25, 1997, the D.C. Department of Corrections found Petitioner guilty of lack of

14  cooperation.  (Respondent's Exhibit 4.)  The additional charge of theft was dismissed and Petitioner

15  was found not guilty of lying.  Id.  Between 1997 and 2000, the D.C. Department of Corrections

16  found Petitioner guilty of the following disciplinary infractions: (1) possessing contraband and major

17  contraband; (2) disrespect and threatening conduct; and (3) possession of major contraband.

18  (Respondent's Exhibit 3, at 1-2.)

19       On January 19, 1999, inmates in the Department of Corrections assaulted Petitioner, who

20  filed a complaint against the District of Columbia for violation of his civil rights under 42 U.S.C. §

21  1983.  Id. at 5.[1]  On November 30, 2000, the District of Columbia and the Department of Corrections

22  entered into a settlement agreement with petitioner in which the District of Columbia paid Petitioner

23  $5,000.00.  (Respondent's Exhibits 5, 10.)  In return, Petitioner signed a release which released the

24  District of Columbia from "any and all actions, damages, claims, and demands. . ." which Petitioner

25  might have against it.  Id.  Petitioner claims that the incidents which occurred between 1997 and

26  2000 were reversed by the District of Columbia as part of the agreement but there is nothing in the

27

28        [1] A copy of the complaint is an un-numbered document attached to Petitioner's petition.

2

1  record which supports his claim.

2      On January 23, 2001, the Corrections Corporation of America, Torrance County Detention

3  Facility, placed Petitioner in administrative segregation for possession of contraband and

4  unauthorized use of the mail or telephone.  (Respondent's Exhibit 6.)

5  C.      Proceedings Before the Parole Commission

6      Respondent submits that Petitioner became eligible for parole on April 29, 2003, on his

7  aggregate sentence of 28 years and 6 months to life.  (Respondent's Exhibit 7, at 3.)  The

8  Commission conducted Petitioner's parole hearing on May 30, 2003.  (Respondent's Exhibit 3.)

9  Petitioner admitted to the description of the offense.  Id. at 1, 4.  Petitioner also admitted to the

10 infraction which occurred in 1994, but denied all of the other disciplinary infractions.  Id. at 3.  He

11 claimed that they were the result of harassment from correctional staff and submitted the release that

12 he signed on November 30, 2002, to support this claim.  Id. at 5.  The hearing examiner reviewed the

13 release and concluded that it resulted from a lawsuit accusing the Department of Corrections of

14 failing to provide adequate protection for Petitioner during the assault on January 19, 1999, and did

15 not affect the Department of Corrections' finding of guilt for the disciplinary infractions.  Id. at 2, 5.

16     The examiner reviewed Petitioner's work assignments and courses that he completed while

17 in custody and concluded that they did not warrant an award for superior programming.  Id. at 3.

18 The hearing examiner then established Petitioner's parole guidelines as 426 to 476 months.  Id. at 4.

19 The hearing examiner concluded, based on the nature of the offenses and Petitioner's history of

20 violence, that Petitioner should not be paroled below his parole guidelines at this time.  Id. at 5.  The

21 hearing examiner recommended that the Commission reconsider the decision to deny parole at a

22 further hearing five years later in May, 2008.  Id.

23     After reviewing the guideline calculation by the hearing examiner, the Executive Hearing

24 Examiner corrected the guideline range, but agreed with the hearing examiner's recommendation to

25 deny parole and schedule a reconsideration hearing in five years.  (Respondent's Exhibit 8.)  The

26 Executive Hearing Examiner calculated the base parole guidelines as 289 to 313 months.  Id. at 1.

27 With the six disciplinary infractions, the guidelines were increased by 12 to 34 months for a total

28 guideline range of 301 to 347 months.  Id.  Petitioner had been in custody for 218 months as of the

3

1   date of the hearing.  Id.  In 2008, Petitioner would have served 278 months, which would still be

2   below the base guideline range of 289 months even without the additional 12-34 months for the six

3   disciplinary infractions.  Id.

4          On June 23, 2003, the Commission issued its decision adopting the recommendation of the

5   hearing examiner.  (Respondent's Exhibit 9.)  The Commission denied parole and ordered a

6   reconsideration hearing in May 2008.  Id.

7                                        DISCUSSION

8   A.     Standard of Review

9          Writ of habeas corpus relief extends to a person in custody under the authority of the United

10  States.  See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show

11  he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

12  § 2241(c)(3).  Petitioner's claims are proper under 28 U.S.C. § 2241 and not 28 U.S.C. § 2255

13  because they concern the manner, location, or conditions of the execution of petitioner's sentence

14  and not the fact of petitioner's conviction or sentence. Tucker v. Carlson, 925 F.2d 330, 331 (9th

15  Cir.1990) (stating that a challenge to the execution of a sentence is "maintainable only in a petition

16  for habeas corpus filed pursuant to 28 U.S.C. § 2241"); Montano-Figueroa v. Crabtree, 162 F.3d

17  548, 549 (9th Cir.1998) (per curiam) (allowing a federal prisoner to use § 2241 to challenge the

18  BOP's restitution policies).

19          Further, because Petitioner is challenging the execution of his sentence at Atwater Federal

20  Penitentiary and Atwater is within the Eastern District of California, Fresno Division, the Court has

21  jurisdiction over this petition. See Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

22  B.     Challenge to Parole Proceedings[2]

23          Petitioner is presently a D.C. Code prisoner in the custody of the BOP for violations of the

24  District of Columbia Criminal Code.  Petitioner challenges the Parole Commission's decision,

25  following a parole hearing, to deny him parole and to schedule a subsequent hearing in May 2008 to

26  reconsider him for release on parole. (Petition, at 1.)  Petitioner claims that the Parole Commission's

27

28          [2] Much of the information contained in this Findings and Recommendations is taken from Respondent's answer to
       the petition, as it correctly and thoroughly sets forth the law and basis for denying the instant petition.

                                             4

1  hearing examiner abused her discretion, acted arbitrarily and capriciously, and denied him due

2  process because she: (1) ignored favorable information, i.e., the "programming achieved by the

3  petitioner over twenty years;" and (2) increased Petitioner's guideline range based on five contested

4  disciplinary reports. Id. at A-C.[3]  Petitioner alleges that the disciplinary reports of the District of

5  Columbia Department of Corrections are false and the product of bias because they were brought by

6  a corrections officer whom he later sued. Id., Statement of Facts at B.  Petitioner claims that all the

7  disciplinary reports which the Commission considered in assessing his case were either dismissed or

8  "collectively adjudicated" in his favor in the District of Columbia courts. Id. at I.  Petitioner also

9  claims that the Parole Commission violated its rules because it did not provide him a tape recording

10 of his hearing.

11        1.        Judicial Review is Barred for Petitioner's Claim that the Commission Ignored
                   Favorable Information

12

13        Petitioner claims that the Commission acted arbitrarily and capriciously and abused its

14 discretion because it failed to consider the favorable information that he submitted to the hearing

15 examiner.

16        Pursuant to the District of Columbia Code, "[t]he Board of Parole created by § 723a of Title

17 18, United States Code, shall have and exercise the same power and authority over prisoners

18 convicted in the District of Columbia of crimes against the United States or now or hereafter

19 confined in any United States penitentiary or prison (other than the penal institutions of the District

20 of Columbia) as is vested in the District Board of Parole over prisoners confined in the penal

21 institutions of the District of Columbia." D.C. Code § 24-409, formerly § 24-209.

22        A court may consider whether the Commission has acted outside its statutory limits. Wallace

23 v. Christensen, 802 F.2d 1539, 1551 (9th Cir. 1986).  "Congress has provided that the Commission

24 must take into account certain factors in rendering an individual parole decision." Id.  Thus, a court

25 may review whether the Commission completely failed to consider these factors which by statute it

26 is required to consider in rendering its parole decision. Id.

27

28        [3] The pages of the petition are numbered 1, 2, 3, A, B, C, D, followed by a statement of facts whose pages are numbered A, B, C, etc.

1    Decisions to grant, deny, condition, modify, or revoke parole, which are substantive in

2  nature, are committed to the Commission's discretion and are not reviewable for abuse of discretion.

3  See Wallace v. Christensen, 802 F.2d 1539, 1544-45 (9th Cir. 1986) )(en banc).  The Court may

4  review the Commission's decisions only for statutory, regulatory, or Constitutional violations.  Id. at

5  1551-52.  The Commission's evaluation of the weight to give to favorable and adverse information

6  is discretionary and not subject to judicial review.  Id. at 1552; Walker v. United States, 816 F.2d

7  1313, 1317 (9th Cir. 1987).

8    As Respondent submits, the Commission is not obligated to explain why it did not find that

9  Petitioner's mitigating information was more persuasive than his disciplinary record.  D.C. Code §§

10  24-401 through 409 does not require the Commission to explain the rationale for its decisions.  In the

11  absence of a statutory requirement, there is no mandate that the Commission provide a reason for its

12  finding or specify the particular weight it assigned to the favorable information submitted by

13  Petitioner.  Shahid v. Crawford, 599 F.2d 666, 671 n.6 (5th Cir. 1979) (citing legislative history for

14  the proposition that the Commission does not have to explain what weight it assigned to each factor

15  it considered when its decision is within the guidelines).

16    In the instant case, the hearing examiner's summary demonstrates that she reviewed the

17  documents submitted by Petitioner, but decided to adhere to the guidelines applicable to Petitioner's

18  case.  (Respondent's Exhibit 3, at 2, 5.)

19    2.    No Due Process Right to Parole for D.C. Code Offenders

20    Petitioner claims that the manner in which the Commission conducted his parole hearing and

21  the Commission's decision violated his due process rights.

22    The Constitution does not create a liberty interest in parole which is entitled to due process

23  protection; however, an independent source, such as state law, may create such an interest.  See

24  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  The D.C.

25  parole statute and applicable regulations, however, do not create a liberty interest in parole.  See

26  Price v. Barry, 53 F.3d 369, 370 (D.C. Cir. 1995) (holding that the D.C. Code did not create an

27  expectancy of release); Brandon v. D.C. Board of Parole, 823 F.2d 644, 648 (D.C. Cir. 1987)

28  (declining to find that D.C. parole procedures created a liberty interest in release on parole); Ellis v.

1    District of Columbia, 84 F.3d 1413, 1420 (D.C. Cir. 1996) (holding that parole guidelines adopted

2    for D.C. prisoners do not create liberty interest).  Petitioner cannot, therefore, claim that the

3    Commission violated his procedural due process rights when it denied his release on parole.

4           3.     Challenge to the Commission's Consideration of the Disciplinary Reports is not Ripe
              for Review

5

6           Petitioner challenges the Commission's decision to continue his case for five years based on

guidelines that include disciplinary infractions that he claims have been reversed.  For the foregoing

7    reasons, this issue is not yet ripe for judicial review.

8           As Respondent correctly submits, Petitioner cannot challenge the Commission's decision

9    until he receives a decision that results in a concrete, existing claim of illegal detention.  Petitioner's

10   claim is factually baseless because he has not been affected by the disciplinary hearing.  If

11   Petitioner's next hearing in 60 months (at the 278-month point in his custody) results in a parole

12   grant before Petitioner has served 313 months (the top of the base parole guidelines without the

13   additional guidelines for disciplinary infractions), the disciplinary infractions will not have had any

14   impact on Petitioner's prison time.  Petitioner will not be affected by the disciplinary infractions

15   unless the Commission denies parole in 2008, and Petitioner subsequently remains confined beyond

16   313 months into the 12 to 34 month range added because of the disciplinary infractions.

17          Judicial review requires an actual, present controversy, not a hypothetical issue.  See United

18   States v. Linares, 921 F.2d 841, 843 (9th Cir. 1999) (holding that defendant lacked standing to

19   challenge a hypothetical revocation of supervised release that may never occur).  The ripeness

20   doctrine prevents courts from becoming involved in questions that have not yet concretely affected

21   the parties.  See Pence v. Andrus, 586 F.2d 733, 737 n. 10 (9th Cir. 1978) (finding that the ripeness

22   doctrine protects agencies from judicial interference where the administrative decision has not been

23   formalized and the challenging party has not felt its effects in a concrete way).

24          4.     Petitioner May Not Collaterally Attack the D.C. Department of Corrections'
              Disciplinary Reports in a Parole Hearing

25

26         Petitioner contends that the Commission was barred from taking the D.C. Department of

27   Corrections' disciplinary reports into consideration to assess his parole guidelines.

28            a.     The Parole Commission May Take Reports From Other Agencies Into

1            Account to Arrive at its Decision

2       The Commission relies on other agencies' determinations to make an accurate prediction

3 concerning the likelihood of a prisoner to remain in the community without committing "antisocial

4 acts" once he is released on parole.  The Commission need not conduct a separate hearing to verify

5 the other agency's findings.  See Kramer v. Jenkins, 803 F.2d 896, 901 (7th Cir. 1986) (holding that

6 once one agency has made a finding, there is no constitutional requirement that the finding be subject

7 to collateral attack by another agency).

8       The D.C. Department of Corrections and the BOP are responsible for investigating and acting

9 upon charges of misconduct within the prison, while the Commission has the authority to set parole

10 release dates.  See Jackson v. Wise, 390 F.Supp.19, 22 (C.D. Ca. 1974) (finding if the Bureau of

11 Prisons holds a hearing which meets due process requirements, the Commission may accept and act

12 upon such hearing without conducting a separate hearing of its own).  The Commission may

13 consider the disciplinary reports it receives from the D.C. Department of Corrections and the BOP

14 unless it receives information that the reports have been expunged or reversed.

15          b.      Petitioner Has Failed to Demonstrate that the Disciplinary Reports that he
Challenges Have Been Reversed

16

17       Petitioner claims that the United States District Court for the District of Columbia

18 adjudicated the disciplinary reports in his favor and, therefore, the Commission should not take them

19 into consideration.  Petitioner, as the moving party in habeas corpus, has the burden of proving that

20 the disciplinary reports were reversed or otherwise settled in his favor.  See Sumner v. Mata, 449

21 U.S. 548, 551 (1981); Lee v. United States, 468 F.2d 906, 907 (9th Cir. 1972).

22       Petitioner has not demonstrated that the District of Columbia District Court actually reversed

23 the findings of the Department of Corrections' disciplinary board.  (Respondent's Exhibit 10.)  As

24 Respondent states, the district court order dated May 10, 2001, which dismissed his case, says

25 nothing about the disciplinary reports.  Id.  The hearing examiner concluded that the disciplinary

26 reports from 1997 through 2000 had not been reversed and, therefore, the Commission was entitled

27 to consider the reports in its evaluation of Petitioner's case.

28       In support of his claim, Petitioner submits a copy of the disciplinary report dated March 25,

1    1997, to support his claim that there was no finding of guilt and the charges were dismissed.

2    (Respondent's Exhibit 4.)  However, as Respondent notes, the report itself contradicts Petitioner's

3    claim because it clearly states under the heading "Board Finding and Recommendation", that he was

4    found guilty of lack of cooperation, and only the theft and lying charges were dismissed.  Id.

5            Ordinarily, Petitioner's remedy would be to challenge the disciplinary records by suing the

6    District of Columbia for reversal of the disciplinary reports, not suing the Commission.   However,

7    in this instance, Petitioner is barred by his release, signed on November 30, 2000, from suing the

8    District of Columbia regarding the disciplinary reports:

9            I . . . do release and forever discharge the District of Columbia . . . its officers, agents,
             servants, and employees, including, but not limited to, all defendants named in the
10           lawsuit filed in the United States District Court for the District of Columbia
             1:99cv903 of and from any and all actions, damages, claims, and demands
11           whatsoever which I or any person or persons claiming by, through or under me now
             or hereafter can or may have be reason of or in any way arising from any or all
12           incidents described, or which could have been described, in the Complaint and
             Amended Complaint filed in the referenced lawsuit, including, but not limited to the
13           following: 1) any and all injuries arising on or about January 19, 1999, when plaintiff
             was allegedly assaulted at the Central Facility at Lorton, Virginia, 2) any claims of
14           retaliation for engaging in protected activities, 3) any failure to provide medical
             attention for injuries sustained on or about January 19, 1999, 4) any destruction of
15           legal materials, 5) battery, and 6) harassment.

16   (Respondent's Exhibit 5.)  Therefore, Petitioner cannot attempt to bypass the release by suing the

17   Commission to obtain the result it precludes.

18           5.        Commission Decision Denying Parole Was Not Arbitrary or Capricious

19                     a.        Parole Guideline Calculation

20           The Commission assumed jurisdiction over D.C. offenders on August 5, 1998, pursuant to

21   the National Capital Revitalization and Self-Government Improvement Act of 1997.  P-L 105-33, §

22   11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131 ("Revitalization

23   Act").  The Revitalization Act gives the Commission exclusive jurisdiction over all D.C. felony

24   prisoners and authorizes the Commission to amend or supplement the 1987 D.C. parole regulations.

25   See D.C. Code § 24-131(c).

26           Under the current version of the D.C. Guidelines, the salient factor score, a tool used to

27   predict recidivism, is combined with pre and post-incarceration factors to establish a base point score

28   guideline range.  See 28 C.F.R. § 2.80; Respondent's Exhibit 9.  The Commission then adds the

1  number of months that are required to be served by the minimum term to this range.  Id.  The

2  Commission also establishes a guideline range for any disciplinary infractions and adds this to the

3  guideline range.  Id.  Finally, the Commission determines whether the prisoner has demonstrated a

4  superior level of programming in prison and deducts this program achievement award from the

5  guideline range.  Id.  The result is a total guideline range which indicates the customary range of time

6  to be served, except in unusual circumstances, before release.  Id.

7        In the instant case, the Executive Hearing Examiner calculated Petitioner's salient factor

8  score as a 5.  (Respondent's Exhibit 9, at 2.)  Because the current offense and one prior offense

9  involved felony violence and the current offense involved the death of a victim, his base point score

10  was calculated as an eight.  Id.  The corresponding base point score guideline range was 72 to 96

11  months.  (Respondent's Exhibit 9, at 3.)  The Executive Hearing Examiner added the 217 months

12  required by Petitioner's minimum sentence, which is expressed as a range of 217 to 217 months.

13  The Executive Hearing Examiner calculated Petitioner's disciplinary guideline range as 12 to 34

14  months, which was added to the guidelines.  Consideration of a parole applicant's disciplinary record

15  is allowed under the D.C. parole statute.  See Hall v. Henderson, 672 A.2d 1047, 1055 (D.C. 1996)

16  (upholding 60-month continuance based on "repeated negative institutional behavior").

17        Lastly, because the hearing examiner determined that Petitioner's program achievement did

18  not warrant an award for superior program achievement, there was no deduction from the guidelines.

19  The total guideline range was calculated as 301 to 347 months.  (Respondent's Exhibit 9, at 3.)

20        Under the arbitrary and capricious standard, a reviewing court must consider whether an

21  agency's decision was based on a consideration of the relevant factors and whether there has been a

22  clear error of judgment.  See Envtl. Def. Ctr. Inc. V. EPA, 344 F.3d 832, 858 n.36 (9th Cir. 2003).  It

23  is well settled that the Commission may grant a parole date beyond the upper limit of the parole

24  guidelines.  See Walker v. United States, 816 F.2d at 1316; Stroud v. U.S. Parole Commission, 668

25  F.2d 843 (5th Cir. 1982); Castaldo v. U.S. Parole Commission, 725 F.2d 94 (10th Cir. 1984).  Where

26  the decision does not exceed the applicable guidelines, the Commission is within its authority.  See

27  Reynolds v. McCall, 701 F.2d 810, 814 (9th Cir. 1983) (upholding Commission's decision to set

28  parole date where no upper limit to the guidelines was stipulated for the offense).  On the other hand,

10

1   the Commission could be found to have acted arbitrarily or capriciously if it completely ignores the

2   guidelines.  Wallace v. Christensen, 802 F.2d at 1551 (finding that a court may review whether the

3   Commission has completely failed to consider factors which are required by statute or has rendered a

4   decision outside the guidelines without a showing of "good cause").

5          In the instant case, Petitioner admitted to the offense conduct and does not contest the base

6   guidelines established by the Commission.  (Respondent's Exhibit 3, at 1.)  The Commission's

7   decision to deny parole and reconsider Petitioner for parole in five years did not exceed the parole

8   guidelines even if one does not incorporate the challenged disciplinary guidelines into the total

9   guideline range.

10          6.          Petitioner Was Not Entitled To A Copy Of The Hearing Tape

11          Petitioner contends that he does not have a tape recording of his parole hearing to help him

12   substantiate his claims against the Commission.

13          Respondent submits that the Commission was unable to provide Petitioner with a tape

14   recording of his hearing because the hearing tape was blank, possibly a result of the recording

15   machine malfunctioning.  The Commission's regulations for D.C. Code prisoners require the

16   Commission to make and retain a recording of every parole hearing.  See 28 C.F.R. § 2.72(e).  The

17   Commission provides a copy of this tape at the request of eligible prisoners.  See 28 C.F.R. §

18   2.56(e).

19          First, this claim is not cognizable pursuant to § 2241.  Although the Code of Federal

20   Regulations require that the Commission tape record all the parole hearing, there is no constitutional

21   right to a tape recording of a parole hearing.  Writ of habeas corpus relief is available if a federal

22   prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United

23   States."  28 U.S.C. § 2241(c)(3).   As such, the claim is not cognizable in a § 2241 petition.

24          Even if the claim were reviewable in this forum, the Commission has complied with the

25   regulations.  Petitioner attached a letter to the petition from a technician with the Commission

26   written in response to his request for a copy of his May 2003 parole hearing.  (Exhibit A, attached to

27   petition.)  The letter states that a tape recording from the hearing was retained; however, the tape

28   recording was blank and no duplicate could be made.  (Id.)

11

1     Based on the record before this Court, the Commission has complied with its regulations.

2 The Commission retained a tape recording of the hearing, however, it is blank and no duplicate can

3 therefore be made.  Thus, if a non-defective tape recording of the hearing existed it would have been

4 provided to Petitioner.  Further, as Respondent submits the Commission provided Petitioner with a

5 written statement of its decision.  Moreover, Petitioner fails to demonstrate or allege how the tape

6 recording of the hearing would further substantiate his claim.  Accordingly, Petitioner's claim is

7 without merit.

8                                    RECOMMENDATION

9     Based on the foregoing, it is HEREBY RECOMMENDED that:

10     1.     The petition for writ of habeas corpus be DENIED; and

11     2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

12     These Findings and Recommendations are submitted to the assigned United States District

13 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the

14 Local Rules of Practice for the United States District Court, Eastern District of California.  Within

15 thirty (30) days after being served with a copy, any party may file written objections with the court

16 and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

17 Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within

18 ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will

19 then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

20 advised that failure to file objections within the specified time may waive the right to appeal the

21 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22      IT IS SO ORDERED.

23   **Dated:   March 30, 2006**          _____ **/s/ Dennis L. Beck**_____
     3b142a                              UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28